UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLEARBROOK, an Illinois corporation, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No.  08 C 2653 |
| ) | |
| TEMPERATURE EQUIPMENT ) | Judge Gettleman |
| CORPORATION, an Illinois corporation, ) | |
| doing business as HARRY ALTER CO., ) | |
| and JOHN DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT TEMPERATURE EQUIPMENT CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS II
AND III**

Defendant, TEMPERATURE EQUIPMENT CORPORATION doing business as HARRY ALTER CO. ("TEC"), by its attorneys, DONALD S. ROTHSCHILD and BRIAN M. DOUGHERTY of GOLDSTINE, SKRODZKI, RUSSIAN, NEMEC AND HOFF, LTD., submit its Memorandum of Law in Support of Its Motion to Dismiss Counts II and III of Plaintiff's Complaint, and states as follows:

**I.      BACKGROUND**

On March 27, 2008, Plaintiff filed a three-count class action complaint in the Circuit Court of Cook County, Illinois ("Compl.") against TEC alleging a violation of the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA") (Count I), violation of Section 2 of the Consumer Fraud Deceptive Business Practices Act (815 ILCS 505/2) "(CFA") (Count II), and conversion (Count III). Plaintiff claims that TEC sent a one-page, unsolicited, facsimile transmission to Plaintiff.  With respect to Count II, Plaintiff claims this was an "unfair practice" under the CFA and that Plaintiff was damaged when the one-page fax used one sheet of Plaintiff's paper and some ink/toner.

Plaintiff also claims that this type of "unsolicited advertising" gives TEC an unfair price advantage over those who advertise through the U. S. postal system, since the latter incur more direct costs as opposed to the former (such as TEC) who use fax broadcasting.  Count II must be dismissed since an "unfair" practice under the CFA has not been sufficiently alleged and Plaintiff has not sufficiently pled standing under the "consumer nexus" test.     Count III should be dismissed since no claim for conversion exists under the allegations.  Specifically, Plaintiff cannot claim that TEC exerted dominion and control over the paper and ink/toner used to print the fax.  Moreover, Plaintiff's damages are trivial and do not amount to a serious interference with its rights.

## II.     RULE 12(b)(6) STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Fed.R.Civ.Proc. 12(b)(6); *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998).  In order to withstand a motion to dismiss, a complaint must provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action" will not suffice.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).  In other words, a complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Id*. at 1965.  Application of this standard to the instant case requires dismissal of Counts II and III of Plaintiff's Complaint.

## III.    ARGUMENT

### A.    THERE ARE INSUFFICIENT ALLEGATIONS OF AN "UNFAIR PRACTICE" UNDER THE CFA

A private cause of action may be brought under Section 10a(a) of the CFA which requires proof of "actual damage." *Oliveira v. Amoco Oil Company*, 201 Ill.2d 134, 149 (2002) *citing* 815 ILCS 505/10a(a).  Additionally, a private cause of action under Section 10a(a) requires proof that the damage occurred "as a result of" the deceptive act or practice.  *Id*.  This language imposes a

2

proximate cause requirement. *Id*. Thus, to adequately plead a private cause of action under the CFA, a plaintiff must plead: 1) a deceptive act or practice by the defendant, 2) the defendant's intent that the plaintiff rely on the deception, 3) the occurrence of the deception in the course of conduct involving trade or commerce, and 4) actual damage to the plaintiff 5) proximately caused by the deception. *Id*. Recovery may also be had for unfair conduct as well. *Robinson v. Toyota Motor Credit Corporation*, 201 Ill.2d 403, 417 (2002).

The allegations do not demonstrate that sending a one-page, unsolicited fax is somehow a deceptive act or practice under the CFA. Thus, the issue turns on whether sending the fax was an unfair practice. In *Robinson*, the Illinois Supreme Court adopted the test set forth in *Federal Trade Comm'n v. Sperry*, 405 U.S. 233 (1972) to determine whether conduct was unfair. The *Sperry* Court found three factors relevant to unfairness: 1) whether the practice offends public policy; 2) whether the conduct is immoral, unethical, oppressive or unscrupulous; and 3) whether it causes substantial injury to consumers. *Sperry*, 405 U.S. at 244 & n.5. All three criteria, however, do not need to be met in order to find unfairness. *Robinson*, 201 Ill. 2d at 418. Rather, "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id. citing Chesire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 106 (1992). Plaintiff has not alleged a plausible theory supporting factors 2 and 3 of the *Sperry* test.

**1.   Plaintiff had a reasonable alternative to receiving future faxes by contacting TEC**

Regarding the second factor, Plaintiff only alleges that it received an unsolicited, one-page fax. Conduct that violates the second factor would include a practice that imposes a lack of a meaningful choice or an unreasonable burden on the consumer. *Western Railway Devices Corp. v. Lusida Rubber Products, Inc.*, 2006 WL 1697119, at *5 (N.D. Ill. June 13, 2006). There is nothing

immoral, unethical or unscrupulous about sending a one-page fax. Someone may receive one unsolicited phone call from a business and that must be endured as part of everyday life. The same is true regarding unsolicited mail. It still has to be opened, whether it is junk or not. Additionally, sending one fax is not alleged to be oppressive. There are also no allegations as to how one fax substantially disrupted Plaintiff's business. The fax even states that TEC can be e-mailed or called so that one can be removed from future fax advertisements. (Compl. and Exhibit A). Thus, Plaintiff was presented with a reasonable alternative if it did not want to receive any additional faxes from TEC.[1] *Western Railway Devices Corp.*, 2006 WL 1697119, at *5.

**2.    Receiving a one-page fax did not result in significant harm**

The third factor also has not been sufficiently alleged. A practice causes substantial injury if it causes significant harm to the plaintiff and has the potential to cause injury to a large number of consumers. *Id*. at *6. Plaintiff alleges in conclusory fashion that the fax caused injury. (Compl., ¶¶ 35-36). However, Plaintiff nowhere pleads its damages. CFA claims, like fraud claims, must be pled with particularity and specificity. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 502 (1996); Fed.R.Civ.Proc. 9(b). In *Western Railway*, the district court rejected the allegation that receiving a one-page fax resulted in "significant harm." *Id*. Identical circumstances exist here which dictate the same finding -- minuscule harm.

Plaintiff also cannot recover nominal damages under the CFA. *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1041 (1992). Section 10a(a) of the CFA requires proof of actual damages as a result of the complained-of conduct. There is simply nothing pled to infer the amount

---

[1] Plaintiff does not allege that it took advantage of this alternative and continued to receive faxes from TEC.

of actual damages suffered by Plaintiff as a result of receiving a one-page fax.

    **3.    While sending unsolicited faxes may violate public policy, that alone does not result in an "unfair" practice under the CFA**

The only factor under the *Sperry* test that Plaintiff can meet is that sending unsolicited faxes violates public policy. 47 U.S.C. § 227; 720 ILCS 5/26-3. This factor alone, however, cannot result in finding an unfair practice. If it did, then this would result in holding that sending an unsolicited fax is a *per se* violation of the CFA. However, Section 2Z of the CFA (815 ILCS 505/2Z) specifically lists the violations of other statutes that result in *per se* violations. Since the TCPA is not expressly listed as a violation, it should not be implied. *See People ex rel. Daley v. Grady*, 192 Ill. App. 3d 330, 332-333 (1st Dist. 1989) (the express inclusion of things enumerated in a statute implies the exclusion of all other things). Accordingly, Count II fails to state a cause of action under the CFA.

    **B.    PLAINTIFF HAS NOT PLED A COMPETITIVE INJURY**

Plaintiff also alleges that by sending unsolicited faxes, TEC has a competitive advantage over other businesses who advertise by direct mail since direct mail costs over ten times more than fax broadcasting. (Compl., ¶ 38). Since Plaintiff is not alleging that it was a consumer of TEC's services, it must plead and prove that it meets the "consumer nexus" test by alleging that TEC's conduct involves trade practices or otherwise relates to consumer protection concerns. *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146, 160 (2nd Dist. 1998). Thus, a plaintiff must plead that: 1) its actions were akin to a consumer's actions; 2) how defendant's misrepresentations concerned consumers other than plaintiff; 3) how defendant's conduct implicates consumer protection concerns; and 4) how the requested relief would serve consumer interests. *Id*. The purpose of the "consumer nexus" test is allowing a business to sue

another business "to redress competitive injury they suffer when other businesses deceive customers." *American Hardware Manufacturers Association v. Reed Elsevier, Inc.*, 2004 WL 3363844, at *15 (N.D. Ill. December 28, 2004). However, "[a]ny mere effect on consumers as a result of defendant's actions does not suffice to 'implicate consumer protection'." *Id*.

Here, Plaintiff does not plead how its actions are akin to those of a consumer. Plaintiff is not alleging any business relationship with TEC or that Plaintiff and TEC are competitors. Plaintiff is also not alleging any deceptive business practices either.[2] In fact, the fax (Compl. and Exhibit A) concerns a warranty provided by Payne Heating and Cooling ("Payne"). Plaintiff does not allege that the fax contains false or misleading statements concerning any warranties offered by Payne. The only consumer protection concern is receiving unsolicited faxes. This only speaks to "unfairness," the elements of which have not been met. *See* Section III. A, *supra*. Lastly, Plaintiff fails to plead how the requested relief would serve consumers. The only complaining party is Plaintiff and given the relatively minor losses at issue (viz. one piece of paper and some toner/ink), it is unlikely that consumer interests would be served through Count II. The TCFA is more appropriate since the available relief (viz. $500.00 per violation) favors individual civil actions as opposed to actions under the CFA which requires proof of actual damages. 815 ILCS 505/10a(a). For all of these reasons, Count II must be dismissed.

    **C. NO CONVERSION CLAIM EXISTS SINCE PLAINTIFF WAS NOT DEPRIVED OF ITS PROPERTY AND THERE WAS NO SIGNIFICANT INTERFERENCE WITH PLAINTIFF'S RIGHTS**

In order to state a claim for conversion, one must allege: 1) the defendant's unauthorized and

---

[2] For instance, Plaintiff has not alleged that the fax advertisement was somehow deceptive which arguably would have a market impact. See, e.g., *High Road Holdings, LLC v. Ritchie Bros. Auctioneers (America), Inc.*, 2008 WL 450470, at *4 (N.D. Ill. February 15, 2008) (plaintiffs failed to state a CFA claim against auctioneer where it failed to adequately plead a "consumer nexus").

wrongful assumption of control, dominion or ownership over the plaintiff's personal property; 2) the plaintiff's right in the property; 3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and 4) the plaintiff's demand for possession of the property. *General Motors Corporation v. Douglass*, 206 Ill. App.3d 881, 886 (1st Dist. 1990). "The essence of conversion is the wrongful deprivation of one who has the right to the immediate possession of the object unlawfully held." *Id.* The deprivation may be permanent or for an indefinite time. *In re Thebus*, 108 Ill.2d 255, 259 (1985). In addition to deprivation, intentionally destroying or altering a chattel suffices as well. *Loman v. Freeman*, 2008 WL 1746680, at *13 (Ill. April 13, 2008) *citing Restatement (Second) of Torts*, § 226, at 329 (1965). Plaintiff cannot sustain any of the elements of conversion since it was never deprived of the use of its facsimile machine or over the paper the facsimile was printed and there was no serious interference with its right to any property.

   1.   **Plaintiff cannot claim that TEC ever exercised dominion or control over its paper and ink/toner**

Plaintiff has not shown the deprivation of any of its property. In *In re Starlink Corn Products Liability Litigation*, 212 F.Supp.2d 828, 844 (N.D. Ill. 2002), a case involving defendants' contamination of plaintiff's crops, the district court noted that plaintiff did not allege that defendants destroyed plaintiff's crops or deprived plaintiff of possession. *Id.* at 844. Plaintiff retained possession and had control over the crops at all times. *Id.* The only damage that was suffered was the lowered price for the crops in the marketplace. *Id.*

Judge Shadur, analyzing similar allegations in a TCPA case, held that the sending of an unauthorized fax does not constitute a conversion of property because the fax recipient's paper, ink or toner "never came into [defendant's] possession at all," and thus, defendant could not be said to have "assumed control, dominion or ownership over the property." *Rossario's Fine Jewelry, Inc.*

*v. Paddock Publications, Inc.*, 443 F.Supp.2d 976, 980 (N.D. Ill. 2006).  As a matter of law, the conversion claim failed.  *Id*.  The district court reached its opinion after applying Illinois law and the "Court's faithful adherence to the teaching of the Illinois Supreme Court ..."  *Id*.

Here, Plaintiff alleges that sending wrongful faxes converts paper and ink/toner for TEC's use. (Compl., ¶¶ 48-50).  Plaintiff's claim fails in numerous respects.  Plaintiff has not alleged that TEC **intended** to exercise control over Plaintiff's paper and ink/toner, as opposed to intending to send a fax.[3]  TEC intended to send an advertisement via facsimile and nothing more.  Furthermore, Plaintiff has not alleged the exercise of dominion, control or ownership over Plaintiff's paper and ink/toner.  Plaintiff at all times remained in possession of the paper and ink/toner upon which the advertisement was printed.  While the paper's and ink/toner's "form" may have changed, the paper could still have been used for other purposes;  in other words, the paper's identity or existing character was not materially altered or damaged.  *In re Starlink Corn Products Liability Litigation*, 212 F.Supp.2d at 844.  While the one sheet of paper may have lost its "perfect" market value, it still had value nonetheless.

Under Plaintiff's theory, almost any conduct that results in the unwanted or unauthorized **use** of one's own property constitutes conversion.  For instance, under Plaintiff's theory, a conversion action would lie if a business inundated a specific consumer with so much "junk mail," that his post office mailbox became unusable and overfilled such that legitimate mail could not be stored.  The mailbox's identity and essential function has not been changed.  The consumer could still use it (albeit with a little more oversight), as it never left his control, dominion and ownership.  Thus, a

---

[3] If TEC deliberately fax broadcasted 5000 faxes to Plaintiff that had no useful purpose, then the story might be different since Plaintiff would be deprived of the use of his fax machine as well as numerous reems of paper and cartridges of toner.

conversion action would not lie against the business for conversion of the mailbox.  Similarly, a conversion action does not lie against a fax recipient simply because its paper and ink/toner have been used as the "means" to print an unauthorized fax.  This would stretch the outward bounds of conversion law and eliminate certain requirements which the Illinois Supreme Court has not done in this area of the law.

### B.     Plaintiff's conversion claim fails because there has not been a serious interference with its rights

The Illinois Supreme Court has followed Section 222A of the Restatement (Second) of Torts' definition of conversion.  *In re Thebus*, 108 111.2d at 259.  Section 222A defines conversion as:

> ... an intentional exercise or dominion or control over a chattel which so **seriously interferes** with the right of another to control it that the actor may be justly required to pay the other the full value of the chattel. (Restatement (Second) of Torts, §222A (1965)) (emphasis added)

In determining the "seriousness" of the interference that is the subject of a conversion claim, the following factors are considered: 1) the extent and duration of the actor's exercise of dominion or control; 2) the actor's intent to assert a right inconsistent with the other's right of control; 3) the actor's good faith; 4) the extent and duration of the resulting interference with the other's right to control; 5) the harm done to the chattel; and most significantly for this case, 6) the inconvenience and expense caused to the other.  *Restatement (Second) of Torts*, § 222A(2).

Applying the Restatement's factors requires dismissal of Count III.  The extent and duration of the exercise of dominion and control does not exist since Plaintiff never lost possession or control over the one sheet of paper and its ink/toner.  TEC is not alleged to have asserted any right to Plaintiff's property inconsistent with Plaintiff's rights.  TEC is not alleged to have intended to send a fax in bad faith (e.g. intentionally "tie up" Plaintiff's fax machine).  The extent and duration of the

interference is virtually non-existent: the printing of a one-page fax. The harm is virtually non-existent since the paper could still be used for other purposes (e.g. scratch paper or the reverse side of the sheet). There has been little to no inconvenience or expense to Plaintiff since only a one-page fax was printed. Plaintiff does not allege that this caused substantial harm to its business, its fax machine, its paper supply or its ink/toner supply. In fact, Plaintiff has not pled what damages it specifically suffered short of losing one sheet of paper and an unquantifiably small amount of ink/toner. After applying all of these factors, it is clear that Plaintiff's claim falls under the "trivial" spectrum when assessing conversion claims. This is what Judge Shadur characterized as "*de minimis non curat lex*" in describing plaintiff's damages, which consisted of the generating of a one-page fax. *Rossario's Fine Jewelry, Inc.*, 443 F.Supp.2d at 980. Judge Shadur's reasoning is equally applicable here.

The Supreme Court of Nevada has also held that sending an unsolicited fax advertisement does not constitute conversion. *Edwards v. Emperor's Garden Restaurant*, 130 P. 3d 1280, 1287-88 (Nev. 2006). Relying on § 226 of the Restatement (Second) of Torts, the court held that "conversion generally is limited to those severe, major, and important interferences with the right to control personal property that justify requiring the actor to pay the property's full value. *Id*. at 1287. The court explained that sending a fax, even if unauthorized, to the plaintiff did not constitute a conversion of plaintiff's paper and toner because "any damage to [plaintiff's] paper and toner that occurred from a single facsimile advertisement was merely technical and so inconsiderable as to require the application of the common-law doctrine *de minimis non curat lex*." *Id*. at 1288.

*Rossario's Fine Jewelry* and *Edwards* are persuasive regarding whether sending a one-page, (allegedly unauthorized) fax results in property damage compensable under the law. Plaintiff's

losses are so small that it would take more time determining the value of a sheet of paper and the proportionate value of the ink/toner used to print the fax advertisement than it would to litigate the remainder of this case! Conversion is relegated to those instances where the deprivation is so severe that the defendant is required to pay full value for the property. *In re Thebus*, 108 Ill.2d at 259 *citing* Restatement (Second) of Torts, § 222A. The one sheet of paper used to print the fax still had value despite Plaintiff's intimations. All that Plaintiff can show is that some of its property was **used** to print a fax advertisement that it allegedly did not want to receive. Such is life, but such is not conversion. Thus, Count III must be dismissed.

### IV.  CONCLUSION

Counts II and III are nothing more than Plaintiff's attempt to split its "claim" and advocate different theories of recovery. The Federal Rules of Civil Procedure do not owe allegiance to this style of craftsmanship. *See* Fed.R.Civ.Proc. 8(a) ("A pleading which sets forth a claim for relief ..."); *NAACP v. American Family Mutual Insurance Company*, 978 F.2d 287, 292 (7th Cir. 1992) (noting that the federal procedural rules replaced "causes of action" with "claim for relief"). This case concerns nothing more than the TCPA and whether its provisions were violated. Carving up the facts and slapping different theories does not change the character of this action.

Counts II and III also contain nothing more than a formulaic recitation of some, but less than all, of the required elements to sustain a CFA and conversion claim, respectviely, under Illinois law. The United States Supreme Court has held that more than this is required to raise a claim above a speculative level. *Bell Atlantic Corp.*, 127 S.Ct. at 1965. Indeed, Counts II and III hover well below the speculative level because the allegations do not sustain relief under either the CFA or conversion. WHEREFORE, Defendant, TEMPERATURE EQUIPMENT CORPORATION doing

business as HARRY ALTER CO., respectfully request that this Court enter an order dismissing Counts II and III of Plaintiff's Complaint and award all other relied this Court deems equitable and just.

> Respectfully submitted,
>
> TEMPERATURE EQUIPMENT
> CORPORATION, doing business as
> HARRY ALTER CO.
>
> By: /s/ Donald S. Rothschild
>     One of Its Attorneys

Goldstine, Skrodzki, Russian,
Nemec and Hoff, Ltd.
Donald S. Rothschild
Brian M. Dougherty
835 McClintock Drive, Second Floor
Burr Ridge, IL 60527
630/655-6000
Attorney No. 00404

## CERTIFICATE OF SERVICE

I, Donald S. Rothschild, an attorney, certify that I served a copy of ***Defendant Temperature Equipment Corporation's Memorandum of Law in Support of Its Rule 12(b)(6) Motion to Dismiss Counts II and III*** was filed with the United States District Court via electronic submission through CM/ECF and was served on all registered participants on May 15, 2008.

> /s/ Donald S. Rothschild
> Attorney for Defendant Temperature
> Equipment Corporation

Donald S. Rothschild
Brian M. Dougherty
GOLDSTINE, SKRODZKI, RUSSIAN,
NEMEC AND HOFF, LTD.
835 McClintock Drive, Second Floor
Burr Ridge, Illinois 60527